# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

AMANDA L. WALTERS,
    Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:14-cv-481

Barrett, J.

Litkovitz, M.J.

**REPORT AND**
**RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying

plaintiff's applications for disability insurance benefits (DIB) and supplemental security income

(SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 12), the

Commissioner's memorandum in opposition (Doc. 15), and plaintiff's reply memorandum (Doc.

19).

## I. Procedural Background

Plaintiff filed applications for DIB and SSI in October 2011, alleging disability since

September 30, 2004, due to chronic fatigue syndrome, fibromyalgia, chronic allergies, herpes

simplex virus, Epstein Barr virus, irritable bowel syndrome, major depressive disorder,

anxiety/panic disorder, and immune dysfunction syndrome. (Tr. 361). Plaintiff's applications

were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was

granted a *de novo* hearing before Administrative Law Judge (ALJ) Mary F. Withum, which was

held via video conference. Plaintiff and an impartial vocational expert (VE) appeared and

testified at the ALJ hearing. On February 5, 2013, the ALJ issued a decision denying plaintiff's

DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied,

making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A)

(DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the

work previously performed or in any other substantial gainful employment that exists in the

national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

> 2) If the claimant does not have a severe medically determinable physical or
> mental impairment - *i.e.*, an impairment that significantly limits his or her
> physical or mental ability to do basic work activities - the claimant is not disabled.

> 3) If the claimant has a severe impairment(s) that meets or equals one of the
> listings in Appendix 1 to Subpart P of the regulations and meets the duration
> requirement, the claimant is disabled.

> 4) If the claimant's impairment does not prevent him or her from doing his or her
> past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant is not
> disabled. If the claimant cannot make an adjustment to other work, the claimant
> is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-

(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the

sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir.

2004).  Once the claimant establishes a prima facie case by showing an inability to perform the

relevant previous employment, the burden shifts to the Commissioner to show that the claimant

can perform other substantial gainful employment and that such employment exists in the

national economy.  *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.

1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The [plaintiff] has not engaged in substantial gainful activity since September 30, 2004, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: chronic fatigue syndrome (Exhibit 5F/25), depression, and anxiety (Exhibit 10F/6) (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] has not presented credible evidence indicating that she has an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the [plaintiff] has failed to demonstrate with credible evidence that she lacks the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she must be allowed to sit or stand alternatively at will provided she is not off task more than 5% of the time.  She should never climb ladders, ropes or scaffolding, but may frequently climb ramps and/or stairs, stoop, kneel, crouch and/or crawl.  The [plaintiff] must also avoid all exposure to unprotected heights. The [plaintiff] may perform work that is limited to simple, routine, and repetitive tasks performed in an environment free of fast paced production requirements and that involve only simple, work-related decisions with few, if any, work place changes.  She may have only occasional work interaction with members of the general public.

3

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

7. The [plaintiff] was born [in] . . . 1967 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

7. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from September 30, 2004, through the date of [the ALJ's] decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 21-33).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*,

478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence

---

[1] Plaintiff has past relevant work as a retail buyer, administrative assistant, and small business owner. (Tr. 31).

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative occupations such as mail clerk (7,400 jobs regionally and 629,000 jobs nationally), inspector/hand packager (4,500 jobs regionally and 382,000 jobs nationally), and injection mold machine tender (2,400 jobs regionally and 204,000 jobs nationally). (Tr. 32).

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

(1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a

preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

deciding whether the Commissioner's findings are supported by substantial evidence, the Court

considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the

disability determination. Even if substantial evidence supports the ALJ's conclusion that the

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

*See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was

otherwise supported by substantial evidence where ALJ failed to give good reasons for not

giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that the ALJ erred by: (1) making an RFC finding that is not

supported by the evidence of record; (2) failing to properly evaluate the medical opinion

evidence; and (3) improperly evaluating plaintiff's credibility. (Doc. 12).

**1. The ALJ's RFC finding**

Plaintiff alleges as her first assignment of error that the ALJ failed to identify the

evidentiary basis for the RFC finding and to cite "substantial evidence" that supports the finding.

(Doc. 12 at 10). Plaintiff contends that by determining she can perform a restricted range of light

work despite her fibromyalgia, the ALJ improperly substituted her judgment for that of the

medical experts and drew inferences she was not qualified to make from raw medical data about plaintiff's exertional and mental capacity. (*Id*. at 11-12, citing *Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir. 1963) ("While the Secretary may have expertise in respect of some matters, we do not believe he supplants the medical expert.")). Plaintiff also alleges that the ALJ erroneously excluded consideration of "fibromyalgia/CFIDS[3] and its symptom complex," which includes severe pain and fatigue, by relying on SSR 12-2p to find plaintiff does not suffer from the medically determinable impairment of fibromyalgia. (*Id*.).

In response, the Commissioner argues that plaintiff did not meet her burden of showing she was properly diagnosed with fibromyalgia or that she met the criteria of SSR 12-2p governing the evaluation of fibromaylgia. (Doc. 15 at 4-7). The Commissioner further alleges that because the ALJ characterized at least one of plaintiff's impairments as severe, whether she categorized any other impairment as severe is of no import so long as the ALJ considered all of plaintiff's impairments at the remaining steps of the sequential evaluation process. (Doc. 15 at 4, citing *Maziarz v. Sec'y of HHS*, 837 F.2d 240, 244 (6th Cir. 1987); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003)). The Commissioner alleges that the ALJ considered the record as a whole and her conclusion that plaintiff is not disabled is substantially supported. (*Id*. at 6-7).

The ALJ found that plaintiff has severe impairments of chronic fatigue syndrome, depression and anxiety, which more than minimally impact her ability to perform work-related activities. (Tr. 21). The ALJ also considered whether plaintiff's alleged fibromyalgia is a medically determinable impairment pursuant to SSR 12-2p (Tr. 22-23), which provides guidance

---

[3] CFIDS is another term for chronic fatigue syndrome (CFS).
Http://search.medicinenet.com/search/search_results/default.aspx?navState=6483&sourceType=all&query=CFIDS &Search=Search

6

on how the agency both develops "evidence to establish that a person has a medically determinable impairment of fibromyalgia" and evaluates fibromyalgia in disability claims.[4]  SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012).  The ALJ found that plaintiff failed to present sufficient credible evidence of a medically determinable impairment of fibromyalgia pursuant to SSR 12-2p.  (Tr. 23).  A review of the record shows that substantial evidence supports the ALJ's finding and that the finding is not in error for the reasons alleged by plaintiff.

Social Security Ruling 12-2p describes fibromyalgia (FM) as "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 2012 WL 3104869, at *2.  SSR 12-2p explains that FM is a "common syndrome" and that a person's symptoms must be considered when the agency decides if the individual has a medically determinable impairment (MDI) of FM.  *Id*.  Pursuant to the Ruling, "FM is an MDI when it is established by appropriate medical evidence," and the disease "can be the basis for a finding of disability."  *Id*.  Only a licensed physician can provide evidence of an MDI of FM, but the physician's diagnosis alone is insufficient.  *Id*.  Rather, the evidence must "document that the physician reviewed the person's medical history and conducted a physical exam."  *Id*.  The agency will "review the physician's treatment notes to see if they are consistent with the diagnosis of FM, determine whether the person's symptoms have improved, worsened, or remained stable over time, and establish the physician's assessment over time of the person's physical strength and functional abilities."  *Id*.

_____

[4] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc Sec.,* 628 F.3d 269, 272 n. 1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).  The Sixth Circuit has refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations but has assumed that they are.  *Id*. (citing *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 549 (6th Cir. 2001)).

7

The agency will find that a person has an MDI of FM if a physician diagnosed FM and provides the evidence described under § II.A or § II.B of the Ruling, and the physician's diagnosis is not inconsistent with the other evidence in the individual's case record. *Id*. Under § II.A., the agency "may find that a person has an MDI of FM if he or she has all three of the following": "1. A history of widespread pain - that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back) - that has persisted (or that persisted) for at least 3 months" and which "may fluctuate in intensity and may not always be present."; 2. "At least 11 positive tender points on physical examination" which must be found in specified locations; and 3. Evidence that other physical and mental disorders that could cause the symptoms or signs were excluded, such as "imaging and other laboratory tests (for example, complete blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor)." *Id*., at *2-3.

A person may be found to have an MDI of FM under § II.B. if she has all three of the following criteria: 1. A history of widespread pain as described under § II.A.1.; 2. "Repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome;" and 3. Evidence such as that described in § II.A.3 that "other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded[.]" *Id*., at 3. Signs of FM include "muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain,

8

blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or

welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures,

dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy

bruising, hair loss, frequent urination, or bladder spasms." *Id.*, § II.B.2, n. 9.  Co-occurring

conditions include irritable bowel syndrome or depression and "anxiety disorder, chronic fatigue

syndrome, irritable bladder syndrome, interstitial cystitis, temporomandibular joint disorder,

gastroesophageal reflux disorder, migraine, or restless leg syndrome." *Id.*, n. 10.

Here, the ALJ found that the record did not establish that the criteria of either § II.A or §

II.B were satisfied.  (Tr. 23).  The ALJ stated that according to plaintiff's testimony, she was first

diagnosed with FM in the 1990s by her primary care physician, Dr. Scott R. Swope, D.O., who is

not a rheumatologist but a family practice and sports medicine physician; plaintiff testified she

has never been to a specialist such as a rheumatologist; and "her doctors have not specifically

excluded other conditions with similar or overlapping symptoms" as required under both §§ II.A.

and II.B. before arriving at a diagnosis of fibromyalgia.  (*Id.*).

Plaintiff alleges that the ALJ's finding that she does not have an MDI of FM is not

supported by the evidence.  Plaintiff alleges that in so finding, the ALJ noted but failed to

consider relevant evidence and substituted her judgment for that of plaintiff's treating and

examining physicians.  (Doc. 12 at 12-17).  Plaintiff notes that the Sixth Circuit has recognized

for many years that FM is a valid diagnosis and has also recognized that objective tests are of

little relevance to the diagnosis.  (*Id.* at 12, citing *Preston v. Sec'y of Health and Human

Services*, 854 F.2d 815 (6th Cir. 1988); *Rogers*, 486 F.3d at 243 (fibromyalgia "causes severe

musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances"

but there are no objective tests that can affirmatively confirm the disease)).  Plaintiff alleges that

9

"all medical professionals of record accepted as a given that [she] had fibromyalgia or the symptomatically similar CFIDS," neither of which are "characterized by litmus test 'objective findings'" (Doc. 12 at 8, 9) and both of which may produce "strikingly similar or even indistinguishable symptom complexes." (Doc. 19 at 4). Specifically, according to plaintiff, Dr. Jewel Stevens, M.D., first diagnosed plaintiff with FM after taking over her care from Dr. Swope (Tr. 54); consultative examining physician Dr. Aivars Vitols, D.O., found plaintiff's symptoms and complaints to be consistent with CFIDS and fibromyalgia (Tr. 794-97); and consultative examining psychologist Dr. David Chiappone, Ph.D., referenced the FM diagnosis in his assessment (Tr. 802-808). (Doc. 12 at 8-9). Plaintiff also suggests that the ALJ improperly applied SSR 12-2p to diagnostic determinations and treatment records generated some years before the Ruling was issued in July 2012. (Doc. 12 at 9, 10).

Initially, plaintiff has not developed her argument that the ALJ improperly applied SSR 12-2p, which was issued prior to the ALJ's decision in this case, to diagnoses and treatment records which predate the Ruling. Plaintiff has therefore waived any alleged error related to this issue. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1998) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). In any event, the Sixth Circuit has recognized for many years predating plaintiff's disability claim that, "The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 244 (6th Cir. 2007) (citing *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988)).

Further, plaintiff's allegation that the ALJ erred by relying on SSR 12-2p because the ALJ is not qualified to draw inferences about a claimant's exertional capacity from raw medical findings is not well-taken. In a case such as this where the individual alleges disabling limitations based on FM, SSR 12-2p provides a framework for the ALJ to evaluate the claim of FM and its severity. The ALJ properly applied that framework here and, for the reasons explained below, reasonably found that the criteria necessary to support an MDI of FM were not satisfied.

The record includes a diagnosis of FM and references to that diagnosis by both treating and examining medical sources. Plaintiff testified at the ALJ hearing that treating physician Dr. Stevens initially diagnosed her with FM.[5] (Tr. 53-56). The record includes a June 2002 treatment note by Dr. Stevens which lists diagnoses of CFS, fibrositis (the term by which FM was formerly known), and chronic allergic rhinitis. (Tr. 677). In a treatment note dated October 10, 2007, Dr. Stevens diagnosed plaintiff with seasonal allergies, FM, and CFS. (Tr. 700). Further, in March 2011, consultative examining physician Dr. Vitols found that plaintiff's "constellation of symptoms and complaints are consistent with CFIDS and fibromyalgia," and he reported that his impression was anxiety and depression as per history and CFIDS/FM.[6] (Tr. 794-97). Plaintiff notes that consultative examining psychologist Dr. Chiappone also mentioned FM in his April 2011 assessment. (Tr. 802-07). However, Dr. Chiappone did not diagnose the disease, instead stating only that plaintiff reported she has FM and deferring an evaluation of

---

[5] The ALJ stated that plaintiff testified it was Dr. Swope, her primary care physician prior to Dr. Stevens, who diagnosed her with FM in the 1990s. (Tr. 23). Plaintiff actually testified that she believed Dr. Swope had diagnosed her only with CFS in the 1990s. (Tr. 54). Dr. Swope's records show that he diagnosed plaintiff with Chronic Fatigue Immune Dsyfunction Syndrome - Incomplete (CFIDS) (Tr. 560) but did not diagnose FM during the four years he treated plaintiff (April 1997 until August 2001). (Tr. 559-652).
[6] Dr. Vitols reported that plaintiff gave a history of suffering from CFIDS/FM since 1990 for which she had been under the care of Dr. Swope and, more recently, Dr. Stevens. (Tr. 794-97).

11

plaintiff's pain condition to a physical medicine expert.  (Tr. 807).

Nonetheless, although the record includes a diagnosis of FM by one or more treating and examining physicians, a diagnosis of FM is not sufficient to establish an MDI pursuant to SSR 12-2p.  Here, the ALJ reasonably determined that the diagnosis of FM was not supported because the criteria of either § II.A. or § II.B. were not satisfied.

Section II.A. requires (1) a history of widespread pain, (2) a finding of at least 11 positive trigger points on examination, and (3) evidence that other disorders which could be causing the plaintiff's symptoms have been ruled out.  SSR 12-2p, 2012 WL 3104869, at *2-3.  Plaintiff consistently reported a history of widespread pain and other symptoms.  These symptoms are succinctly summarized in the report of Dr. Vitols, who reported that plaintiff presented with a myriad of bodily complaints and with a five-page typewritten report she had prepared which "categorized her physical and psychological complaints on [a] daily, weekly and monthly basis," which he reviewed at plaintiff's request.  (Tr. 794).  Dr. Vitols noted that the "highlights" included "eyelid swelling, fluid retention, earache, ear drainage, mouth dryness, nose and nasal passage swelling and congestion, sinus pain, pressure [and] headaches" and that plaintiff further documented the following symptoms in her report:

> [S]he always has flu like symptoms; she has daily malaise, occasional feelings of nausea, coordination problems, chest pain and tightness.  She reports muscle and joint aches attributing this to fibromyalgia with associated body stiffness, muscle weakness, myalgias and neck pain.  She reports skin manifestations ranging from acne to bruising to feeling hot with paresthesias, slow healing and dryness of the skin.  [She] lists sleep disorder and disturbances of insomnia, hypersomnia, hyperhidrosis[7], sleep hypnagogia[8], unrestorative sleep and unusual nightmares.  [She] has tachycardia[9], excessive thirst, tremors and shaking, ocular migraines[10]

---

[7] "Hyperhidrosis" is a disorder marked by excessive sweating that usually begins at puberty and affects the palms, soles and armpits.  http://medical-dictionary.thefreedictionary.com/hyperhidrosis.

[8] "Hypnagogic" relates to the state of drowsiness preceding sleep.  http://medical-dictionary.thefreedictionary.com/hypnagogic.

[9] "Tachycardia" is an abnormally rapid heart rate.  http://medical-dictionary.thefreedictionary.com/tachycardia.

and persistent weakness.  Under cognitive dysfunction, she reports attention and concentration difficulties, calculation difficulties, dazed, decision making difficulties, difficulty with planning, inability to complete tasks, loss of thought, reading difficulties, short-term memory loss, spelling difficulty, thought and speech inconsistencies, thought switching and verbal expression difficulties. [She] reports having depression with major depressive disorder and experiencing anxiety/panic disorders.

(Tr. 794-95).  Based on Dr. Vitols' report and the other treatment records documenting plaintiff's subjective complaints of pain, it appears the first prong of § II.A. is satisfied.

However, there is no indication in the record that a trigger point examination was conducted in accordance with SSR 12-2p which produced the required results.  SSR 12-2p requires a finding of "[a]t least 11 positive tender points [which] must be found bilaterally (on the left and right sides of the body) and both above and below the waist" and which are located on each side of the body.  SSR 12-2p, 2012 WL 3104869, at *3.  The tender points are located at the following 18 sites:

- Occiput (base of the skull);
- Low cervical spine (back and side of the neck);
- Trapezius muscle (shoulder);
- Supraspinatus muscle (near the shoulder blade);
- Second rib (top of the rib cage near the sternum or breast bone);
- Lateral epicondyle (outer aspect of the elbow);
- Gluteal (top of the buttock);
- Greater trochanter (below the hip); and
- Inner aspect of the knee.

*Id.*  The Ruling provides that in performing the testing,

[T]he physician should perform digital palpation with an approximate force of 9 pounds (approximately the amount of pressure needed to blanch the thumbnail of the examiner).  The physician considers a tender point to be positive if the person experiences any pain when applying this amount of pressure to the site.

---

[10] "Ocular migraines" are "a form of migraine with transient monocular vision loss, typically in young adults, which may or may not be associated with headache around the eye."  http://medical-dictionary.thefreedictionary.com/ocular+migraines.

*Id.,* § II.A.2.b.

Dr. Stevens reported in June 2002 that plaintiff's physical examination was largely normal, stating only that, "The upper and lower extremities and back have multiple trigger points." (Tr. 677). Dr. Vitols reported in June 2011 that plaintiff's physical examination was largely normal with the exception of some generalized pain and discomfort as well as some pain to palpation of both suboccipital areas, over the trapezius and cervicodorsal junction, and in the right and left popliteal fossa.[11] (Tr. 796-97). Neither Dr. Stevens' finding of an inexact number and location of "multiple trigger points" nor Dr. Vitols' report of pain to palpation at an unspecified number of sites satisfies the requirements of SSR 12-2p § II.A.2. Nor has plaintiff pointed to evidence in the record of a trigger point examination performed by any other treating or examining medical source which satisfies the requirements of § II.A.2.

Even assuming the record included evidence of a trigger point examination with results that satisfied the criteria of § II.A.2, plaintiff nonetheless has failed to produce evidence to satisfy the third prong of both §§ II.A. and II.B.[12] This prong requires evidence showing that other disorders that could cause the symptoms, signs, or co-occurring conditions were ruled out. SSR 12-2p, §§ II.A.3 and II.B.3. Plaintiff concedes that she has never been treated by a rheumatologist, and there is no indication in the record that her treating physicians ever performed testing to rule out other disorders that could be causing plaintiff's symptoms so as to satisfy the required third prong of §§ II.A. and II.B. Thus, the ALJ reasonably determined that §§ II.A.3 and II.B.3 were not satisfied in this case.

---

[11] The "popliteal fossa" is the hollow at the posterior part of the knee. http://medical-dictionary.thefreedictionary.com/Popliteal+fossa.

[12] A trigger point examination is not necessary to establish an MDI of FM under § II.B. (agency may use § II.B to "determine an MDI of FM if the case record does not include a report of the results of tender-point testing, or the report does not describe the number and location on the body of the positive tender points."). SSR 12-2p, § II.B.2.b, n. 6.

For these reasons, the ALJ did not err by finding the evidence does not support an MDI of FM. The ALJ thoroughly evaluated the evidence of record, including the medical assessments, the treatment notes, and plaintiff's subjective complaints, in accordance with the dictates of SSR 12-2p. The evidence substantially supports the ALJ's finding in this regard.

Further, even assuming the ALJ erred by failing to include FM among plaintiff's severe impairments, the error was harmless. Under the Social Security Regulations, once the ALJ determines a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(e), 416.945(e). If an ALJ considers all of a claimant's impairments (both severe and non-severe) in determining the claimant's RFC, the ALJ's failure to characterize additional impairments as "severe" is not reversible error. *McClanahan v. Commissioner of Social Sec.*, No. 1:09-cv-746, 2011 WL 672059, at *4 (S.D. Ohio Feb. 16, 2011) (Barrett, J.) (citing *Maziarz*, 837 F.2d at 244).

Here, the ALJ found severe impairments of CFS, depression and anxiety and proceeded to consider those impairments in the remaining steps of the sequential evaluation process. The ALJ accounted for plaintiff's CFS and severe mental impairments in the RFC by limiting her to light work with the additional following restrictions:

> [S]he must be allowed to sit or stand alternatively at will provided she is not off task more than 5% of the time. She should never climb ladders, ropes or scaffolding, but may frequently climb ramps and/or stairs, stoop, kneel, crouch and/or crawl. The [plaintiff] must also avoid all exposure to unprotected heights. The [plaintiff] may perform work that is limited to simple, routine, and repetitive tasks performed in an environment free of fast paced production requirements and that involve only simple, work-related decisions with few, if any, work place changes. She may have only occasional work interaction with members of the general public.

(Tr. 25). Plaintiff points to no evidence showing FM imposes additional limitations that the ALJ failed to take into account in fashioning the RFC. To the contrary, plaintiff acknowledges that CFS (or CFIDS) and FM are virtually indistinguishable in terms of symptoms, alleging that both CFIDS and FM may produce "strikingly similar or even indistinguishable symptom complexes." (Doc. 19 at 4). Further, no treating or examining physician imposed any functional limitations to account for symptoms of FM. Consultative examining physician Dr. Vitols generally opined that the extreme fatigue and depressive episodes reported by plaintiff would "adversely affect [her] work capabilities," but he assessed no specific functional limitations. (Tr. 797). No other physician who treated or examined plaintiff provided an assessment of her physical limitations. Because plaintiff has not shown that the record supports the imposition of additional functional limitations to account for her FM, any erroneous assessment of plaintiff's FM by the ALJ in this case would be harmless. *See Foster v. Bowen*, 853 F.2d 483, 488-89 (6th Cir. 1988) (relevant consideration in disability case is not claimant's diagnoses, but whether impairments impose disabling limitations).

For these reasons, plaintiff has not shown that the RFC finding restricting her to a range of light work is unsupported. Plaintiff's first assignment of error should be overruled.[13]

**2. The ALJ's evaluation of the medical opinion evidence**

Plaintiff alleges as her second assignment of error that there is no indication in the ALJ's written decision that she evaluated the opinion evidence in accordance with 20 C.F.R. § 404.1527; instead, the evidentiary weight the ALJ assigned the opinions depended on the extent

---

[13] Plaintiff makes additional allegations in connection with her first assignment of error that relate to the ALJ's credibility finding. Plaintiff alleges that in fashioning the RFC, the ALJ erred by discrediting her testimony about her limitations and improperly relying on personal observations of plaintiff to discount her credibility. (Doc. 12 at 12-16). These allegations will be considered in connection with plaintiff's third assignment of error, which challenges the ALJ's credibility finding as unsupported by substantial evidence.

to which the opinions supported the ALJ's conclusions as to plaintiff's disability. (Doc. 18 at 21). Plaintiff did not develop this alleged error in her Statement of Errors beyond making this broad, generalized assertion. However, the Commissioner thoroughly addressed the allegation of error in the opposing memorandum, and plaintiff further developed it in her reply. (Doc. 15 at 7-16; Doc. 19 at 6-9). Plaintiff alleges that the ALJ should have obtained clarification of the conclusory statement of Mr. David Harris, a social worker, regarding plaintiff's ability to work; the ALJ improperly "refused to acknowledge any limitations listed by Dr. Chiappone . . . and discounted the conclusions that did not suit her purpose"; and the ALJ improperly substituted her non-expert judgment for the professional opinion of Dr. Vitols. (Doc. 19 at 6-9).

Plaintiff has not shown that the ALJ erred in weighing the medical opinion evidence. First, the ALJ considered the opinion of Mr. Harris, who issued a one-sentence statement dated November 28, 2011, stating that plaintiff "is unable to work and unable to participate in classroom activities until outcome of her SSDI/SSD filing or notification of the undersigned." (Tr. 809). The ALJ stated that Mr. Harris is not an "acceptable medical source" but is a social worker who is unable to issue medical opinions under the Social Security Regulations and cannot be considered a treating source whose medical opinion may be afforded controlling weight. (Tr. 30). The ALJ stated that she had nonetheless considered Mr. Harris' opinion as an "other source" opinion and found that it deserved "no weight." (*Id*.). The ALJ found that Mr. Harris' conclusory statement of disability was not a "medical opinion" but was a conclusion based on plaintiff's subjective complaints rather than on the available medical evidence; even if it were a medical opinion, it was not well-supported by medically acceptable clinical or laboratory diagnostic techniques; the opinion was conclusory and provided "very little explanation" of the

17

evidence Mr. Harris relied on in forming the opinion; and the determination that an individual is disabled is an opinion on an issue that is reserved to the Commissioner. (*Id.*).

The ALJ did not err by affording Mr. Harris' opinion "no weight." The ALJ was not bound to accept Mr. Harris' opinion as social workers are not "acceptable medicals sources" under 20 C.F.R. §§ 404.1513(a) and 416.913(a) who can provide evidence which establishes the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Although information from "other sources" such as Mr. Harris may provide insight into the severity of the individual's impairments and how they affect the individual's ability to function, 20 C.F.R. §§ 404.1513(d), 416.913(d), the ALJ reasonably rejected Mr. Harris' opinion that plaintiff is unable to work as "other source" evidence which was conclusory, neither well-explained nor supported by any objective findings, and an opinion on an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) (an ALJ is not required to accept a medical source's opinion that his patient is disabled; whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner and a physician's opinion that his patient is disabled is not entitled to any special deference); *Cf. Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.") (citation and brackets omitted). Further, plaintiff has neither legally nor factually developed her argument that the ALJ was required to recontact Mr. Harris for clarification of his statement. Plaintiff's position is not supported by the governing authority or by the record. The Social Security regulations provide that the agency *may* ask the claimant or other sources for more information "[i]f the evidence is consistent but we have insufficient

18

evidence to determine whether you are disabled, or if after weighing the evidence we determine

we cannot reach a conclusion about whether you are disabled. . . ." 20 C.F.R. §§ 404.1520b(c),

416.920b(c). These circumstances do not apply here. The ALJ had sufficient evidence to

determine the functional limitations imposed by plaintiff's impairments. The ALJ's decision to

afford Mr. Harris' opinion "no weight" is supported by substantial evidence.

      Nor did the ALJ err in evaluating Dr. Vitols' opinion. Dr. Vitols opined that plaintiff's

"reported extreme fatigue and depressive episodes would adversely affect [plaintiff's] work

capabilities." (Tr. 797). Dr. Vitols concluded based on the clinical objective findings of his

examination that plaintiff's "work capabilities and tasks of daily living are affected

accordingly." (*Id.*). The ALJ reviewed Dr. Vitols' findings and noted that Dr. Vitols did not

opine that plaintiff's symptoms would preclude all work activity. (Tr. 27). The ALJ concluded

that Dr. Vitols' statement was generally consistent with the record as a whole, and the ALJ took

plaintiff's fatigue and depressive symptoms into account in fashioning the RFC. (Tr. 30). The

restrictions the ALJ imposed are not inconsistent with Dr. Vitols' report, which does not include

an RFC assessment. *Cf. Bowen*, 478 F.3d at 479 (treating source's findings are relevant but

absent an RFC assessment do not speak directly to whether a plaintiff's RFC allows the plaintiff

to work despite her mental impairments). The ALJ did not err by failing to include additional

restrictions in the RFC based on Dr. Vitols' consultative report.

      Finally, the ALJ did not err in evaluating the opinion of consultative examining

psychologist Dr. Chiappone dated April 22, 2011. (Tr. 802-08). Dr. Chiappone gave a

"suggested diagnosis" of major depression and anxiety with a GAF score of 48[14], and he noted

plaintiff's self-reported diagnoses of CFS, FM, irritable bowel syndrome, and immune

dysfunction syndrome. (Tr. 807). Dr. Chiappone opined that plaintiff would have some

difficulty remembering information, although it appeared she can understand and carry out

simple instructions; she would have difficulty multi-tasking and it appeared she could persist for

a short duration but not over time because although her concentration and attention were

adequate during the evaluation, the numerous mental health symptoms she reported that

interfered with her ability to function would cause some difficulty maintaining persistence and

pace; she does not have problems responding appropriately to supervision and co-workers and

interacting with the general public; and she would have difficulty dealing with stress and

pressure on a jobsite due to her anxiety and depression. (Tr. 808).

The ALJ reviewed Dr. Chiappone's objective findings, plaintiff's report of symptoms to

Dr. Chiappone, and Dr. Chiappone's conclusion based on the results of his examination that

plaintiff would likely have some difficulty remembering information, concentrating, and

performing multi-step tasks. (Tr. 28). The ALJ afforded "some, but not significant weight" to

Dr. Chiappone's opinion. (Id.). The ALJ discounted Dr. Chiappone's findings based on

plaintiff's ability to concentrate and participate during the hearing without observable difficulty;

plaintiff's ability to prepare a "detailed and intricate typewritten summary of her conditions,

treatment and symptoms," which indicated that plaintiff was capable of performing "more than

simple or rote and or two step tasks" and was able to "maintain a functional level of

---

[14] "GAF is a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006). A GAF score of 41 to 50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

concentration"; and plaintiff's ability to conduct internet research, prepare meals, bake, and do household chores, which suggested an ability to perform multi-step tasks. (*Id.*). The record therefore belies plaintiff's allegation that the ALJ "refused to acknowledge any limitations listed by Dr. Chiappone." (Doc. 19 at 9). The ALJ discussed Dr. Chiappone's findings and gave valid reasons for discounting Dr. Chiappone's opinion. Those reasons are substantially supported by the record. The ALJ did not err in this regard.

Plaintiff has not shown that the ALJ erred in evaluating the medical opinion evidence. Plaintiff's second assignment of error should be overruled.

### 3. The ALJ's credibility determination

Plaintiff alleges that the ALJ did not evaluate her credibility in accordance with Social Security Ruling 96-7p. (Doc. 12 at 18-19). SSR 96-7p and 20 C.F.R. §§ 404.1529 and 416.929 describe a two-part process for assessing the credibility of an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p, 1996 WL 374186 (July 2, 1996). "[A]n ALJ's findings based on the credibility of the applicant

are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.  Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citations omitted).

Social Security Regulation 96-7p describes the requirements by which the ALJ must abide in rendering a credibility determination:

> It is not sufficient for the adjudicator to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain *specific reasons* for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *2 (emphasis added).

Here, the ALJ gave a thorough account of the evidence is assessing the credibility of plaintiff's allegations of pain, fatigue, depressive symptoms, and resulting limitations.  (Tr. 25-30).  The ALJ determined that although plaintiff had received emergency medical care and sporadic therapeutic services, most of her mental status and physical examinations have been normal, and any diagnoses have been based upon plaintiff's subjective reporting; yet, plaintiff's subjective complaints are of questionable reliability for reasons the ALJ thoroughly explained. (Tr. 30).

In addition to a lack of supporting mental and physical objective findings, the ALJ reasonably relied on inconsistencies in plaintiff's report of mental health symptoms to various medical and non-medical sources to discount plaintiff's credibility.  (Tr. 29-30).  Specifically, plaintiff made conflicting representations about whether she experienced hallucinations.  (*Id.*, citing Tr. 827, 855, 857, 907).  The ALJ also reasonably relied on inconsistencies between

plaintiff's allegations that she could not focus and had a poor memory and evidence of her ability to perform multi-step tasks and to concentrate, including her preparation of a detailed medical journal, her daily activities, and her demeanor at the hearing. (Tr. 28). Plaintiff alleges that the ALJ erred by relying on her demeanor to discount allegations regarding her mental limitations. (Doc. 12 at 12-13, 15). Plaintiff cites two Sixth Circuit cases that she alleges have discredited the so-called "sit and squirm" test by which an ALJ rejects complaints premised solely on her observations of the claimant at the hearing. (*Id*. at 12, citing *Martin v. Sec'y of Health and Human Servs.,* 735 F.2d 1008, 1010 (6th Cir. 1984); *Johnson v. Comm'r of Soc. Sec.*, No. 99-1438, 2000 WL 332059 (6th Cir. Mar. 22, 2000)). The Court in *Martin* rejected use of the test and the ALJ's dismissal of a claim based on pain premised "*solely* on the ALJ's observations at the hearing." *Martin*, 735 F.2d at 1010 (quoting *Weaver v. Sec'y of Health and Human Servs.,* 722 F.2d 310, 312 (6th Cir. 1983) (emphasis added)). In *Johnson*, however, the Court upheld the denial of benefits despite the ALJ's reliance on observations of plaintiff at the ALJ hearing. *Johnson,* No. 99-1438, 2000 WL 332059, at *4 (ALJ wrote one sentence noting the plaintiff's demeanor at the hearing was "essentially unremarkable and there were no indications of severe pain or discomfort"). The Court reasoned that the ALJ's personal observation was but one of several factors, not the sole factor, in the ALJ's determination that the plaintiff's pain was not disabling. *Id.*

This case is more akin to *Johnson* because plaintiff's demeanor at the hearing was only one of many factors on which the ALJ relied to assess her credibility. Moreover, unlike the ALJ in either *Martin* or *Johnson*, the ALJ in this case did not rely on plaintiff's demeanor generally. Instead, the ALJ considered only her demonstrated ability to focus at all times and to "readily remember[] things that she perceived to be to her benefit to present in the hearing,"

which the ALJ found was inconsistent with plaintiff's own testimony regarding this specific mental functions. (Tr. 28). Plaintiff's apparent ability to focus and remember favorable information without difficulty during the hearing suggests her concentration and memory are not impaired to the extent alleged and is a valid reason to discount her credibility. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (in light of the ALJ's opportunity to observe the individual's demeanor, the ALJ's credibility finding is entitled to deference and should not be discarded lightly); *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 538 (6th Cir. 1981).

Plaintiff also alleges that the ALJ erred by relying on her ability to prepare meals, bake, and do household chores to discount her credibility and find she could do light work because these daily activities do not require the same level of exertion as sustained, full-time light work. (*Id*. at 18-19). However, it is clear from the ALJ's decision that the ALJ relied on plaintiff's ability to perform these tasks not as evidence of plaintiff's physical capabilities, but instead as evidence of plaintiff's mental functional capacity. The ALJ was entitled to rely on plaintiff's ability to perform multi-step tasks to discount allegations regarding her inability to focus and concentrate. *See Walters*, 127 F.3d at 532 (an ALJ may consider household activities engaged in by the claimant in evaluating claimant's allegations) (citing *Blacha*, 927 F.2d at 231; *Crisp v. Secretary of Health and Human Servs.*, 790 F.2d 450, 453 (6th Cir. 1986)).

The ALJ also reasonably relied on plaintiff's treatment history to discount her credibility. An ALJ may find a claimant's statements "less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." *See* SSR 96-7p, 1996 WL 374186, at *7. *See also McKnight v. Sullivan*, 927 F.2d

24

241, 242 (6th Cir. 1990) (if claimant cannot afford prescribed treatment or medicine and can find no way to obtain it, "condition that is disabling in fact continues to be disabling in law")). Plaintiff does not dispute that the record shows "significant gaps" in treatment and "relatively infrequent" doctor visits for her allegedly disabling symptoms, and that she failed to follow up with treatment recommendations following a psychiatric hospitalization. (Tr. 30). Plaintiff does not allege that she was unable to obtain medical treatment, and she has not addressed her failure to comply with mental health treatment recommendations. Her unexplained failure to pursue treatment for her allegedly disabling conditions calls into question the validity of her complaints.

In a case such as this, where disability cannot be established by objective medical evidence alone, the ALJ has the "power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Walters,* 127 F.3d at 531 (citing *Bradley v. Secretary of Health and Human Servs.,* 862 F.2d 1224, 1227 (6th Cir. 1988)). Credibility is "a particularly relevant issue" under such circumstances and the Court will generally defer to the ALJ's credibility assessment so long as it is adequately supported. *Id.* (citing *Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990)). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id.* at 531-32 (citing *Bradley,* 862 F.2d at 1227; *cf. King v. Heckler,* 742 F.2d 968, 974-75 (6th Cir. 1984) (noting the lack of substantial evidence for an adverse credibility finding where the only reasonable conclusion supported by the evidence is that the claimant does not possess the RFC to perform any gainful employment)). The evidence regarding the severity of plaintiff's impairments is not consistent in this case and can support more than one reasonable conclusion. The ALJ

25

examined the factors relevant to a credibility determination and substantial evidence supports the ALJ's credibility finding in this matter. Plaintiff's third assignment of error should therefore be overruled.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this case be **CLOSED** on the docket of the Court.

Date: _4/22/15_

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

AMANDA L. WALTERS,                           Case No. 1:14-cv-481
      Plaintiff,                         Barrett, J.
                                              Litkovitz, M.J.
    vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).